**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PAT CONNELL, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-4820** |
| **ALLSTATE INSURANCE COMPANY** | **SECTION: "K"(1)** |

## ORDER AND REASONS

Before the Court is the Defendant Allstate Insurance Company's ("Allstate") Motion for Summary Judgment (Rec. Doc. 39; hereinafter "Def. Mot."), as well as Plaintiffs Pat and Nancy Connell's Opposition and Cross-Motion for Summary Judgment (Rec. Doc. 41; hereinafter "Pl. Mot."). After reviewing the pleadings, memoranda, and relevant law, the Court hereby grants Defendant's motion for the reasons assigned herein.

## STANDARD OF REVIEW

This Court has jurisdiction over the present matter pursuant 42 U.S.C. § 4001, *et seq*., (the National Flood Insurance Act) and under supplemental jurisdiction pursuant to 28 U.S.C. § 1367. As is well-established, "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Evans v. City of Houston*, 246 F.3d 344, 347-48 (5th Cir. 2001), *quoting* Fed. R. Civ. P. 56(c); *Pacific Ins. Co., Ltd. v. Louisiana Auto. Dealers Assoc.*, 273 F.3d 392, (5th Cir. 2001). Where the parties have filed cross-motions for summary judgment, the Court

"review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). However, where the parties have agreed that no material facts are in dispute, it is this Court's sole duty to determine whether the plaintiffs or the defendant are entitled to judgment as a matter of law based on those material facts not in dispute. *Wheeler v. United States*, 116 F.3d 749, 754 (5th Cir. 1997) ("Where, as here, the essential facts are not in dispute, our review is limited to whether the [defendant] or the [plaintiff] is entitled to judgment as a matter of law.") (citation omitted).

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This matter was commenced before this Court on August 25, 2006. Originally, the Plaintiffs' Insurance Agent, Roger Farris Insurance, L.L.C. was joined as a defendant, but this Court granted that defendant summary judgment by Order dated June 26, 2007. *Connell v. Allstate Ins. Co.*, Civ. A. No. 06-4820, 2007 WL 1853398, *1 (E.D. La. June 26, 2007) (Duval, J.). Presently, remaining defendant Allstate and the plaintiffs each seek summary judgment. The parties have agreed that no material issue of fact exists in this matter. *See* Def. Mot. at 2; Pl. Mot. at 3.

In August 2004, the plaintiffs contacted an insurance agent, Roger Farris, for the purposes of obtaining a Standard Flood Insurance Policy ("SFIP") for their property located in Covington, Louisiana. Farris was an Allstate insurance agent in St. Tammany Parish. Allstate is a participant of the "Write Your Own" ("WYO") program of the Federal Emergency

Management Agency ("FEMA").[1] The plaintiffs completed the application for flood insurance through Allstate on or about August 12, 2004, at which time the application was submitted to Allstate for a premium quote. The plaintiffs sought $100,000 worth of coverage for their property. On August 27, 2004, Allstate advised the plaintiffs through insurance agent Farris that $413 would have to be submitted to Allstate to place the policy into force. The plaintiffs did so, which Allstate accepted and subsequently issued an SFIP to the plaintiffs for $100,000 worth of coverage beginning September 12, 2004 through September 12, 2005.

Following the issuance of the SFIP, Allstate discovered that an error had been made in the rating of the policy. Premiums for SFIPs depend, among other factors, on the elevation of the property being insured. An employee at Allstate misread the elevation certificate for the plaintiffs' residence that was submitted with the application. The employee used the elevation of the second floor instead of the elevation of the ground floor in rating the policy. The error resulted in Allstate having incorrectly quoted a premium that was lower than what was required for $100,000 worth of coverage. Allstate determined that a $413 premium would actually only purchase $9,500 worth of coverage for the plaintiffs' property. On January 4, 2005, Allstate sent a written notice to the plaintiffs, which the plaintiffs received.[2] The notice stated:

> Attached is the premium bill for the revision on the above referenced policy. To retain the proposed effective date of 09-12-2004, a premium amount of $1,664.00 must be receved in our office within 30 days of the date of this letter.

---

[1] Under regulatory authority granted to it by Congress in 42 U.S.C. § 4081(a), FEMA created the WYO program, "which authorizes private insurance companies, such as [Allstate], to issue SFIPs." *Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002).

[2] It is not clear when this notice was actually received, but there appears to be no dispute between the parties that it was received at some reasonable point soon after January 4, 2005.

If you have any questions, please call us at 1-800-527-2634.

(Def. Mot. Ex. 3; Pl. Mot. Ex. 1). The notice did not provide any further information regarding the reason for the increase in the premium. The plaintiffs did not tender the additional $1,664.00 in order to maintain the total coverage of $100,000.[3] Allstate therefore reduced the coverage limits for the policy to $9,500 thirty days after the notice was issued.

On August 29, 2005, Hurricane Katrina struck Louisiana. As a result of the hurricane, the plaintiffs property suffered significant flood damage totaling $39,048.68. Allstate refused to pay for the full amount of the damage, instead paying the policy limit of $9,500. Thus, the plaintiffs seek payment from Allstate for the remaining $29,458 that they allege they are owed under the original $100,000 policy.

## ANALYSIS

The plaintiffs have brought three claims against Allstate upon which they seek summary judgment. First, the plaintiffs seek to reform their coverage limits on the SFIP to $100,000 under the Federal Code of Regulations governing SFIPs. *See* 44 C.F.R. Pt. 61, App. A(1), Art. VII(G). Plaintiffs also claim that the initial error in rating their property for flood insurance was caused by Allstate's negligence, and consequently they bring a state law negligence claim. Finally, the plaintiffs bring state law negligence and bad faith claims against Allstate arising out of the SFIP and based on Louisiana Revised Statutes §§ 22:658 and 22:1220.

Allstate seeks summary judgment based on the following arguments. First, Allstate

---

[3]The plaintiffs state that the notice was unclear as to "whether the premium was $1,664 or $2,077 ($1,664 plus the original $413)." (Pl. Mot. at n.2).

argues that the insurance policy cannot be reformed under Article VII because the plaintiffs were given ample notice that additional premium payments were necessary. Furthermore, the negligence claim for Allstate's error in rating the plaintiffs' home is perempted under Louisiana law. Allstate lastly claims that any remaining state law claims are preempted by federal law.[4] The plaintiffs have agreed with Allstate that their claims under Louisiana Revised Statutes §§ 22:658 and 22:1220 are preempted by federal law, and have therefore withdrawn those claims.

Therefore, it falls upon this Court to determine (1) whether the plaintiffs can reform their policy to $100,000 in order to cover their remaining damage from Hurricane Katrina, and (2) whether the plaintiffs' state law negligence claims are perempted.

*Reformation of the Plaintiffs' SFIP*

Plaintiffs seek first to reform their SFIP to retroactively increase coverage up to the originally intended limit of $100,000. Should the plaintiffs be successful in reforming their SFIP, the additional coverage would be paid with federal funds through the WYO insurance policy. *See Wright*, 415 F.3d at 388 (noting that "SFIPs [issued by WYO's] are ultimately supported by federal funds."); *Versai Mgmt. Corp. v. Standard Fire Ins. Co.*, Civ. A. No. 06-4838, 2007 WL 184884, *1 (E.D. La. Jan. 22, 2007) (Feldman, J.) (denying jury trial in claim against WYO insurer "because federal funds are at stake"). Because policy reformation would

[4]Defendant Allstate cites two Fifth Circuit decisions holding that "state law tort claims arising from claims handling by a WYO are preempted by federal law." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005); *see Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 345 (5th Cir. 2005) ("Based on our decision in *Wright*, the district court erred in concluding that state law claims against a WYO carrier are not preempted by the National Flood Insurance Act and related regulations.").

be paid with federal funds, as a rule such policies must be "strictly construed and enforced." *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998) ("[T]he provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced . . . .").

Moving to the Code of Federal Regulations, any reformation of a contract is specifically provided for Title 44. The relevant section is 44 C.F.R. Pt. 61, Appendix A, which provides the specific language regarding reformation contained in each SFIP:

> G. Reduction and Reformation of Coverage
>
> 1. If the premium we received from you was not enough to buy the kind and amount of coverage you requested, we will provide only the amount of coverage that can be purchased for the premium payment we received.
>
> 2. The policy can be reformed to increase the amount of coverage resulting from the reduction described in G.1. above to the amount you requested as follows:
>
> a. Discovery of Insufficient Premium or Incomplete Rating Information Before a Loss:
>
> (1) If we discover before you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current policy term (or that portion of the current policy term following any endorsement changing the amount of coverage). If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the current policy term (or subsequent date of any endorsement changing the amount of coverage).

44 C.F.R. Pt. 61, App. A(1)(VII)(G). The above-quoted language is required by the Code to be inserted into every SFIP,[5] and there appears no dispute that this language was in the plaintiffs'

---

[5]The Code provides as follows:

(a) *Incorporation of forms.* Each of the Standard Flood Insurance Policy forms

policy.

Regarding the application of this language, this Court has recently an analogous case to the present one. In *Englande v. Bradshaw Insurance Company*, homeowner plaintiffs discovered after Hurricane Katrina that they had been paying premiums that were too high due to an error by both parties regarding the zoning of the plaintiffs' property. *Englande*, Civ. A. No. 06-8572, 2007 WL 2461683, at *1-2 (E.D. La. Aug. 22, 2007) (Duval, J.). The plaintiffs brought suit in an attempt to reform their SFIP retroactively "to provide for their true intentions, and as a result, provide the Plaintiffs' with greater coverage," and thus a larger insurance payment due to Katrina-related losses. *Id.* at *3. This Court explained that, because SFIPs are "strictly construed and enforced because claims under an SFIP directly affect the United States Treasury," therefore, "no coverage can be afforded unless it is expressly provided for under the terms of the SFIP." *Id.* (citing 44 C.F.R. § 61.13(a), (d), (e); 44 C.F.R. § 61.5(e); *Formal v. FEMA*, 138 F.3d 543, 545 (5th Cir. 1998)). Using these rules of strict construction, this Court found that "the guidelines are exclusive rather than illustrative," and an SFIP can therefore only be reformed if it "squarely fit[s] within the provisions enunciated by the terms of the SFIP." *Id.* at *5. The Court concluded that the SFIP reformation regulation "only stipulates that

---

> included in appendix "A" hereto (General Property, Dwelling, and Residential Condominium Building Association) and by reference incorporated herein shall be incorporated into the Standard Flood Insurance Policy.

44 C.F.R. § 61.13(a). Moreover, "[t]he Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said documents shall be altered, varied, or waived other than by the express written consent of the Administrator . . . ." 44 C.F.R. § 61.13(d); *see* " *Englande v. Bradshaw Ins. Co.*, Civ. A. No. 06-8572, 2007 WL 2461683, at *3 (E.D. La. Aug. 22, 2007) (Duval, J.) ("[I]n order to maintain control over the provisions of the flood insurance policy, the government does not allow the WYO companies to alter the SFIP's.").

reformation after a loss can be granted if the premium paid was too low for the coverage requested." *Id.* Because the plaintiffs sought reformation of the contract where the premiums were too high instead of too low, this Court concluded that the strict terms of the SFIP did not allow the contract to be reformed. *Id.*

In applying the strict terms of the SFIP regulations to the present case, this Court finds the only possible conclusion is that the SFIP cannot be reformed. Prior to the plaintiffs' loss during Hurricane Katrina, Allstate realized an error in the rating, thus making 44 C.F.R. Pt. 61, App. A(1)(VII)(G)(2)(a) applicable ("Discovery of Insufficient Premium or Incomplete Rating Information Before a Loss"). Once that error was rectified and the correct premium calculated, Allstate notified the plaintiffs by mail on January 4, 2005 that they needed to make an additional payment within thirty days in order to maintain the same policy coverage of $100,000. Because the plaintiffs did not remit any payment, Allstate, consistent with the regulations, provided "only the amount of coverage that can be purchased for the premium payment [Allstate] received," namely $9,500. 44 C.F.R. Pt. 61, App. A(1)(VII)(G)(1).

The plaintiffs rejoin by claiming that the notice they received was insufficient. Again, this Court applies the rule of strict construction of the regulations when addressing claims under an SFIP. Appendix A provides that, where an insurer determines that an additional premium is necessary to maintain the requested coverage, the insurer "will send to [the insured] and any mortgagee or trustee known to us a bill for the current policy term . . . ." 44 C.F.R. Pt. 61, App. A(1)(VII)(G)(1). The notice provided to plaintiffs was as follows:

> Attached is the premium bill for the revision on the above referenced policy. To retain the proposed effective date of 09-12-2004, a premium amount of $1,664.00 must be received in our office within 30 days of the date of this letter.

If you have any questions, please call us at 1-800-527-2634

(Def. Mot. Ex. 3; Pl. Mot. Ex. 1). The plaintiffs contend that this notice was "woefully inadequate" because it did not advise the plaintiffs "that they had the right to reform the policy to the original limits of $100,000," nor did it advise them "what the 'revision' referred to in the notice was." Pl. Mot. at 7.[6] While such an explanation of why the additional premium had to be paid certainly would have been helpful to the plaintiffs, it was not necessary in this case. All that is required under SFIP regulation for the insurer to send a bill that states what payment is necessary to maintain the coverage. *See* 44 C.F.R. Pt. 61, App. A(1)(VII)(G)(2)(a)(1) (" If we discover before you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current policy term . . . ."). Allstate did so in this case, and even further included a phone number to call with any questions. Because Allstate fulfilled the strict requirements of the SFIP regulations, this Court can only conclude that the notice provided on January 4, 2005 was sufficient. Therefore, Allstate fulfilled its responsibilities under the SFIP regulations where an error is discovered prior to loss, thus this Court cannot reform the SFIP and instead must hold that the plaintiffs are entitled only to $9,500

---

[6]Plaintiffs cite one case, *Moosbrugger v. Froelich Paulson Moore, Inc.*, Nos. Civ. A2-97-145, Civ. A2-98-31, 1999 WL 33283356, at *1 (D.N.D. Jan. 29, 1999), for the proposition that the notice in this case was insufficient. In *Moosbrugger*, the plaintiffs were given notice that they had the option of either paying the additional premium in order to obtain their desired coverage, or alternatively they could elect not to pay the additional premium and have their coverage lowered. *Id.* The *Moosbrugger* court did not state that this notice was the absolute minimum of notice, instead merely finding that this notice was sufficient. As stated in this opinion, the Code of Federal Regulations provides precisely what notice is sufficient. While more thorough notice by Allstate may have been desirable, this Court finds that any further notice than that provided by Allstate here is not required by the law.

worth of coverage for their flood damage.

*Prescription of the Plaintiffs' Negligence Claim*

As to the plaintiffs' negligence claims, Allstate alleges that this claim is barred by Louisiana's prescriptive statute.[7] The Louisiana Civil Code sets a one-year prescriptive limit for all negligence actions.[8] La. Civ. Code Ann. art. 3492 (West 2007) ("Delictual actions are subject to a liberative prescription of one year."); *see Bank of New Orleans & Trust Co. v. Monco Agency*, 823 F.2d 888, 890 n.3 (5th Cir. 1987) ("The concept of delictual liability under Louisiana law includes negligence."); *Allstate Ins. Co. v. Torres*, Civ. A. No. 06-5206, 2007 WL 3102791, at *2 (E.D. La. Oct. 23, 2007) (Vance, J.) ("In Louisiana, there is a one year prescriptive period for negligence actions."). There is no apparent dispute that the one-year prescriptive period applies here. The relevant issue, therefore, is when the one-year period commenced.

Article 3492 of the Louisiana Civil Code, which provides the one-year prescriptive period in this case, also states, "This prescription commences to run from the day injury or damage is sustained." La. Civ. Code Ann. art. 3492 (West 2007). As a preliminary issue, this Court must define what the injury was in this case. While the plaintiffs allege that the prescriptive period began at the earliest upon Hurricane Katrina's damaging their home on

---

[7]Notably, Allstate failed to cite a single case in arguing that the negligence claim is perempted, instead citing only Louisiana Civil Code article 3492. Preferably, a party will present its argument with more authority in the future.

[8]Under the Louisiana Civil Code, prescription is generally equivalent to the common law concept of statute of limitations. *Black's Law Dictionary* (8th ed. 2004); *see Allstate Ins. Co.*, 2007 WL 3102791, at *2 n.1.

August 29, 2007, the "injury" here is not the hurricane damage itself. The injury suffered by the plaintiffs in this case was the lack of adequate coverage that was caused by an Allstate representative's negligence. *See Dobson v. Allstate Ins. Co.*, Civ. A. No. 06-0252, 2006 WL 2078423, at *7 (E.D. La. July 21, 2006) (holding that date of injury for plaintiff's negligence claim against insurance agent was not on date of Hurricane Katrina, but when the insurance agent "procured her policy.").

The date that prescription begins is the day that the plaintiffs knew or should have known of the fact that they did not have the coverage that they had requested. As stated by the Louisiana Supreme Court:

> Damage is considered to have been sustained, within the meaning of the article [3492], only when it has manifested itself with sufficient certainty to support accrual of a cause of action. The doctrine of *contra non valentem agere nulla currit praescriptio* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff.

*Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La.1993), *quoted by Daigle v. McCarthy*, 444 F. Supp. 2d 705, 710 (W.D. La. 2006). Therefore, in order for a prescription period to begin, a plaintiff needs to have known of the wrong, or he needs to have had "constructive knowledge" of the wrong, i.e. "more than apprehension that something might be wrong but less than actual knowledge." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999), *quoting The Kendall Co. v. Southern Med. Supplies*, 913 F. Supp. 483, 488 (E.D. La. 1996). The Fifth Circuit has further described the Louisiana standard as the following:

> In other words, the prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim. *See Terrel v. Perkins*, 704 So. 2d 35, 39 (La. App. 1st Cir. 1997). To decide otherwise would be to say that a plaintiff must *know* the cause of her damage, taking away the constructive knowledge component of the rule.

*Luckett*, 171 F.3d at 300.

In *Dobson v. Allstate Insurance Company*, Judge Vance considered whether plaintiffs claim against his insurance agent was perempted by Louisiana Revised Statute § 9:5606, a statute similar to article 3492. The plaintiffs alleged that their insurance agent was negligent in procuring the proper insurance they requested. They further alleged that the date they knew of the negligence was upon damage by Hurricane Katrina in August 2005, thus making their suit timely where it was filed on December 21, 2005. The court noted, however, that defendant Allstate had provided an unrebutted affidavit that the plaintiffs had received a copy of their insurance policy on or before October 2004. *Id.* at *9. Applying the rule that "[i]nformation or knowledge that ought to excite attention and put the alleged victim on guard is sufficient to start the running of prescription." *Id.*, *citing Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002), the court found that the plaintiffs had ample information to commence their action when they received a copy of their policy in October 2004. Even if the plaintiffs did not examine their policy when they received it, the court noted that "[a]n insured party is generally responsible for reading his policy, and he is presumed to know its provisions," and therefore the plaintiffs should have known of their agent's negligence in October 2004. *Id.* at *9. Because they filed their complaint more than a year thereafter, the court held that the plaintiffs' claim was prescribed.

This Court finds that in the present action the plaintiffs' negligence claim is also prescribed. The notice sent by Allstate via mail on January 4, 2005, explained to the plaintiffs that the letter referenced their flood policy, and that in order to retain their original policy, an additional premium would be required to be paid. There is no dispute in the pleadings before

this Court that the plaintiffs received this notice on or about January 2005.[9] Indeed, the plaintiffs at least had knowledge of the deficiency in their flood coverage on August 8, 2005, when they inquired of Allstate regarding increasing their flood coverage to $30,000, a fact that has been previously found by this Court. *Connell v. Allstate Ins. Co.*,2007 WL 1853398, at *4. This information is all that should have been required to "excite attention and put the injured party on guard and call for inquiry." *Campo*, 828 So. 2d at 510-11. Had the plaintiffs investigated these facts by calling the phone number in the notice, they would have discovered that the prior policy rating was errant. The plaintiffs, however, did not do so. Indeed, the plaintiffs at least had knowledge of the deficiency in their flood coverage on August 8, 2005, when they inquired of Allstate regarding increasing their flood coverage to $30,000, a fact that has been previously found by this Court. *Connell*, 2007 WL 1853398, at *4.[10] Moreover, the Federal Emergency Management Agency has determined, through the regulatory process, that such written notice is all that is necessary to bring the need for reformation of a policy to the attention of an insured party. Any alternative holding by this Court would be contrary to the policy decisions of FEMA, to which Congress has delegated the task of constructing a coherent policy and regulatory structure regarding flood insurance. *See Englande*, 2007 WL 2461683, at *3 (discussing Congress' delegation of authority over flood control insurance program to FEMA). It should

---

[9]The pleadings do not allege that precisely what date on which the plaintiffs received the notice dated January 4, 2005. It is not in dispute, however, that the plaintiffs received this notice prior to August 2005. Therefore, regardless of what exact date the notice was received, the plaintiffs filing of their claim on August 25, 2006 is more than one year after their receipt of the notice.

[10]Even if August 8, 2005 is the date of knowledge of the injury, the plaintiffs' filing on August 25, 2006 is well beyond the one-year peremption period.

also be noted that any requirement of actual knowledge on the part of the plaintiff would eviscerate Louisiana's rule that constructive knowledge of the harm is all that is necessary to commence the prescriptive period. *See Luckett*, 171 F.3d at 300. Because Allstate's January 2005 notice provided the necessary facts that would have resulted in the plaintiffs becoming aware of the negligent rating and improper policy coverage, this Court finds that the plaintiffs negligence claim is barred.

**CONCLUSION**

For the reasons set forth in this opinion, this Court finds that (1) the plaintiffs cannot reform their SFIP policy, and (2) plaintiffs' state law negligence claims are prescribed. Considering that plaintiffs have withdrawn the rest of their claims, accordingly

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. 39) is **GRANTED**, and Plaintiffs' Cross Motion for Summary Judgment (Rec. Doc. 41) is **DENIED.**

New Orleans, Louisiana, this 28th day of November, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**